United States District Court
Southern District of Texas
**ENTERED**
January 04, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

SHOTKAM LLC and DAVID ALEXANDER  §
STEWART,                          §
                                  §
        Plaintiffs/Counter-Defendants,  §
                                  §
v.                                §     CIVIL ACTION NO. H-20-1070
                                  §
TACHYON, INC. and RAYMOND C. LING,  §
                                  §
        Defendants/Counter-Plaintiffs.  §

**MEMORANDUM AND OPINION**

This patent-infringement case involves weapon-mounted technology designed to improve

a shooter's accuracy.  David Alexander Stewart's U.S. Patent No. 8,908,045 (the "'045 Patent")

claims a system for capturing, analyzing, and displaying data about a shooter's aim at a moving

target.  Shotkam, LLC owns the '045 Patent and, using the patented technology, manufactures and

sells a weapon-mounted "digital video camera."  (Docket Entry No. 52 at 9–10).  The camera takes

a short video of each shot and uses a visual indicator to show the shot's location relative to the

target.   Stewart owns other related patents, including U.S. Patent No. 9,546,846 (the "'846

Patent"), which is a "video camera gun barrel mounting system." (Docket Entry No. 1 at ¶ 15

(uncapitalized)).

Shotkam and Stewart (together referred to as "Shotkam") allege that Tachyon, Inc. and its

president and chief executive officer, Raymond C. Ling, (together referred to as "Tachyon")

infringed Claims 1 and 20 of the '045 Patent with their "2020 GunCam for Clays & Hunting."

(Docket Entry No. 1 at ¶ 22).  The parties have asked the court to construe Claims 1 and 20, and

Tachyon has moved for summary judgment based on its proposed construction.  (Docket Entries

Nos. 47, 49, 51, 61).  The court held a *Markman* hearing on December 16, 2020.  The disputed

issue is whether the phrase "at least one of [item], and [item]" is conjunctive or disjunctive. If the term is conjunctive, then Shotkam's factual allegations fail to allege patent infringement by Tachyon. If the term is disjunctive, infringement is not precluded.

Based on the motion, the briefs, the record, the arguments of counsel, and the applicable law, the court finds and concludes that the disputed term is disjunctive. Applying that construction, the court denies Tachyon's motion for summary judgment. The reasons are set out in detail below.

## I.     Background

### A.     The Parties

Shotkam is a limited liability corporation organized under Florida law, with its principal place of business in Boca Raton. Stewart owns the '045 Patent and is the owner and managing member of Shotkam. (Docket Entry No. 1 at ¶¶ 5–6). Tachyon is a corporation organized under Texas law. Ling is its president and CEO. (Docket Entry No. 11 at ¶¶ 7–8).

### B.     The Infringement Allegations

Shotkam alleges that Tachyon's "2020 GunCam for Clays & Hunting" directly infringes the '045 Patent because it uses "a camera device[] and a point of aim compensation and correction system . . . made pursuant to at least independent claims 1 and 20 of the '045 Patent." (Docket Entry No. 1 at ¶¶ 22, 24–29; Docket Entry No. 35 at 2). Shotkam also alleges that Ling "has been and is inducing infringement of the '045 Patent by actively and knowingly inducing others to make, use, sell, or offer for sale" the infringing product. (Docket Entry No. 1 at ¶¶ 30–35). Shotkam seeks injunctive relief, actual and exemplary damages, and attorneys' fees. (*Id.* at 10).

Shotkam alleges that Tachyon has known of Shotkam's patent rights since at least February 2017, when Shotkam sent Tachyon and Ling a letter discussing alleged similarities

between Tachyon's products and the Shotkam '846 Patent claims. (*Id.* at ¶17; Docket Entry No. 11 at ¶ 17). That letter did not discuss the '045 Patent.

### C.    The Disputed Terms

The parties dispute two terms in Claims 1 and 20 of the '045 Patent. Those claims read as follows, with the disputed terms in bold:

> 1. A camera device comprising:
>
> a camera mounted on a shooting device to capture video discharge data of the shooting device associated with at least one of a sight picture, a target lead, and a shooting technique, the camera is independent of a targeting system of the shooting device, and the video discharge data allows a shooter to estimate a lead given to a target in both a case where the target was hit and where the target was missed, and also to estimate a shooting device alignment relative to a target in both the case where the target was correctly aimed at and where the target was incorrectly aimed at;
>
> **at least one of**
>
> > a [reticle] generating system to add a [reticle] in a field of view towards a discharge end of the shooting device**, and**
> >
> > an indicator generating system to add a graticule in the field of view towards the discharge end of the shooting device, to indicate an aim point of the camera**; and**
>
> **an alignment system to adjust a position of the aim point of the camera relative to the aim point of the shooting device.**
>
> 20. A point of aim compensation and correction system comprising:
>
> a camera device mounted on a shooting device for capturing an image;
>
> **at least one of**
>
> > an optical alignment mechanism includes one or more of an optical bore sighting, a shooting device's fixed sight, a scope mounted on the shooting device, a generated indicator, and a generated overlay**, and**
> >
> > a laser alignment mechanism with one or more of laser bore sighting, a laser integral to the camera device, a laser separate from the camera device, to adjust and offset an aim point indicator of the camera device and an aim point of the shooting device by programming a correction offset data into the camera device; and
>
> wherein the offset data is processed by the camera device to align the aim point of the camera to the aim point of the shooting device.

('045 Patent, Claim 1, Col. 19:49–Col. 20:3; Claim 20, Col. 22:28–45).[1]

---

[1] The '045 Patent uses the term "reticule" instead of "reticle." Although "reticule" is an alternative spelling for "reticle," it also—and primarily—means a small drawstring purse or handbag. *See Reticule*, <u>Merriam-Webster</u>, https://www.merriam-webster.com/dictionary/reticule (last accessed December 30, 2020). For clarity and consistency, the court uses the term "reticle" throughout this opinion.

To resolve the first dispute, the court must determine whether "at least one of" in Claim 1 precedes a two- or three-item list. That is, the court must determine whether "an alignment system" is included in the list that follows "at least one of," as Tachyon claims, or is not part of that list, as Shotkam claims.

To resolve the second dispute, the court must determine whether "at least one of . . ., and" in Claims 1 and 20 is construed as conjunctive or disjunctive. That is, the court must decide whether "at least one of [A], and [B]" means: (a) "at least one of [A] and at least one of [B]," as Tachyon claims; or (b) "at least one of either [A] or [B], or both," as Shotkam claims.

### D. Procedural History

Shotkam filed this suit in the Eastern District of Texas in December 2019. (Docket Entry No. 1). In March 2020, the parties jointly moved to transfer to the Southern District of Texas. (Docket Entries Nos. 8, 9). Tachyon answered and asserted affirmative defenses and counterclaims. (Docket Entries Nos. 10, 11). In May 2020, the court granted Shotkam's motion to dismiss Tachyon's counterclaims and denied the motion to strike the defenses. (Docket Entries Nos. 30, 45). Tachyon's summary judgment motion is based on its proposed construction of the '045 Patent applied to the record evidence. (Docket Entry No. 47).

### E. The Record

The summary judgment record consists of the following:

- the '045 Patent, issued December 9, 2014, (Docket Entries Nos. 47-1, 49-1);

- a portion of Stewart's application for the '045 Patent, (Docket Entry No. 49-4);

- Ling's declaration, (Docket Entry No. 47-2);

- Stewart's declaration, (Docket Entry No. 49-6);

- William R. Trueba, Jr.'s declaration, (Docket Entry No. 49-2);

4

- Michael F. Price's declaration and supplemental declaration, (Docket Entries Nos. 49-8, 49-9);

- an August 7, 2018, bulletin from the U.S. Patent and Trademark Office concerning the designation of *Ex Parte Jung*, 2016-008290 (March 22, 2017), (Docket Entry No. 49-12);

- a "Declaration and Power of Attorney for Patent Application" signed by Stewart on December 19, 2012, (Docket Entry No. 51-1);

- a "Quick Start Guide" for Tachyon's "2020 GunCam for Clays & Hunting," (Docket Entry No. 47-3);

- a "Quick Start Guide" for Tachyon's "1080p GunCam," (Docket Entry No. 47-4);

- a "Quick Start Guide" for Tachyon's "GunCam" mount, (Docket Entry No. 47-5);

- a "Notice of Allowability" from the U.S. Patent and Trademark Office to Stewart, (Docket Entries Nos. 47-8, 49-5, 51-2); and

- Shotkam's technology tutorial, explaining how its product uses the '045 Patent technology, (Docket Entry No. 52).

## II.    Claim Construction

### A.    The Legal Standard

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1253 (Fed. Cir. 2011) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)). "'[T]he construction of a patent . . . is exclusively' for 'the court' to determine." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015) (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)). Claim terms are "generally given their ordinary and customary meaning," defined as "the meaning that the term would have to a person of ordinary skill in the art in . . . question at the time of the invention." *Allergan Sales, LLC v. Sandoz, Inc.*, 935 1370, 1373 (Fed. Cir. 2019) (quoting *Phillips*, 415 F.3d at 1312–13). "The words used in the claims are interpreted in light of the intrinsic evidence of record, including the written

5

description, the drawings, and the prosecution history." *Id.* (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (brackets omitted)); *see also Lexion Medical, LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1356 (Fed. Cir. 2011) (courts do not determine the customary meaning of claim terms "in a vacuum").  Although courts may consider extrinsic evidence, "such evidence is generally of less significance than the intrinsic record." *Allergan*, 935 F.3d at 1373. (quoting *Wi-LAN, Inc. v. Apple Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016)).  "The sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Phillips*, 415 F.3d at 1324.

   "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent . . . and claim construction . . . involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.  "In many cases," however, the court must consult the patent's specification and, if in evidence, its prosecution history. *Id.* at 1314, 1317; *accord Allergen*, 935 F.3d at 1373; *see also Lexion Medical*, 641 F.3d at 1356 (the meaning of a disputed claim term "should be harmonized, to the extent possible, with the intrinsic record, as understood within the technological field of the invention."). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

### B.    The Disputed Terms

Two terms are disputed:  (1) whether the list that follows "at least one of" in Claim 1 includes "an alignment system"; and (2) whether "at least one of . . . and" in Claims 1 and 20 is disjunctive or conjunctive.

### 1.    "; and an alignment system"

Claim 1 reads as follows, with the disputed terms in bold:

1.  A camera device comprising:
a camera mounted on a shooting device to capture video discharge data of the shooting
    device associated with at least one of a sight picture, a target lead, and a shooting
    technique, the camera is independent of a targeting system of the shooting device, and
    the video discharge data allows a shooter to estimate a lead given to a target in both a
    case where the target was hit and where the target was missed, and also to estimate a
    shooting device alignment relative to a target in both the case where the target was
    correctly aimed at and where the target was incorrectly aimed at;
**at least one of**
    a [reticle] generating system to add a [reticle] in a field of view towards a discharge end
        of the shooting device, and
    an indicator generating system to add a graticule in the field of view towards the
        discharge end of the shooting device, to indicate an aim point of the camera**; and**
    **an alignment system to adjust a position of the aim point of the camera relative to the
        aim point of the shooting device.**

Claim 1 can be read as describing a "camera device comprising: [A]; at least one of [B], and [C]; and [D]." Tachyon argues that "[D]" is part of the list that follows "at least one of."  (Docket Entry No. 61-1 at 3).  Shotkam argues that "at least one of" includes only "[B], and [C]," and that "[D]" is a separate element like "[A]." (*Id.*; Docket Entry No. 49 at 11, 20–21).

The formatting of Claim 1 supports Shotkam's construction.  As shown above, "an alignment system" is indented to the same degree as "at least one of," and not further indented in line with "a [reticle] generating system" or "an indicator generating system."  That indentation is meaningful.  *See* 37 C.F.R. § 1.75(i) ("Where a claim sets forth a plurality of elements . . ., each element . . . of the claim should be separated by a line indentation."); *accord* MPEP § 608.01(I)(i);

*see also* MPEP § 608.01(m) ("there may be plural indentations to further segregate subcombinations or related steps.").

Additionally, Claim 1 uses a comma to separate "a [reticle] generating system . . ., and" from "an indicator generating system," but uses a semicolon to separate "an indicator generating system . . .; and" from "an alignment system."  That use of a semicolon is in line with other portions of the Patent, in which semicolons separate listed elements.  (*See e.g.*, '045 Patent, Col. 4:34–47, Col. 11:23–61).

The embodiments also support reading the "alignment system" as an element separate from the list that includes the "[reticle] generating system" and the "indicator generating system."  For example, Embodiment 1 describes a "camera device comprising:  (a) a camera mounted on [some] shooting device; and . . . (c) an alignment system . . .; and (d) a [reticle] and/or indicator generating system."  ('045 Patent, Embodiment 1, Col. 11:23–35; *see also* Col. 4:34–45).  By that description, the alignment system is clearly an element separate from the reticle and indicator generating systems.  That separation is further evidenced by Embodiment 3, which describes a "camera device according to Embodiment 1, but without a [reticle] and/or indicator generating system."  ('045 Patent, Embodiment 3, Col. 12:3–6).  In that embodiment, the invention may have an alignment system and no reticle or indicator generating system.  The alignment system is a separate element.

The court construes Claim 1 as describing "[a] camera device comprising" three elements: (1) "a camera mounted on a shooting device"; (2) "at least one of a [reticle] generating system . . . and an indicator generating system"; and (3) "an alignment system."

### 2.    "at least one of . . ., and"

The parties dispute whether the term "at least one of . . ., and" in Claims 1 and 20 is conjunctive or disjunctive.  Shotkam urges a disjunctive reading, in which the term means "at least

one of [A] and/or [B]."   The term "and/or" adds ambiguity.   A clearer way to express the disjunctive construction is "at least one of either [A] or [B], or both [A] and [B]."   That is consistent with Shotkam's asserted understanding of Claims 1 and 20:   Claim 1 as "[a] camera device comprising," among other things, either (a) "a [reticle] generating system," (b) "an indicator generating system," or (c) both, (Docket Entry No. 61-1 at 1); and Claim 20 as "[a] point of aim compensation and correction system comprising," among other things, either (a) "an optical alignment mechanism," (b) "a laser alignment mechanism," or (c) both, (*id.* at 5).

Tachyon urges the conjunctive construction, in which the term means "at least one of [A] and at least one of [B]."   Claim 1 would read as "[a] camera device comprising," among other things, (1) at least one "[reticle] generating system" and (2) at least one "indicator generating system." (*Id.* at 1).  Claim 20 would similarly read:  "[a] point of aim compensation and correction system comprising," among other things, both (1) "an optical alignment mechanism" and (2) "a laser alignment mechanism." (*Id.* at 5).

The dispute centers on whether Claims 1 and 20 require at least one of each element in their lists, as Tachyon argues, or at least one of the elements in their lists, but not both, as Shotkam argues.   For example, in Tachyon's construction, a gun-mounted camera device that lacks a graticule generating system could not infringe Claim 1.   In Shotkam's construction, that device could infringe Claim 1.

The court begins with the claim terms and their context.  *Aptalis Pharmatech Inc. v. Apotex Inc.*, 718 F. App'x 965, 968 (Fed. Cir. 2018); *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1086 (Fed. Cir. 2003).  In *SuperGuide v. DirecTV Enterprises, Inc.*, the Federal Circuit concluded that "the plain and ordinary meaning" of the "phrase 'at least one of' means 'one or more.'"  358 F.3d 870, 886 (Fed. Cir. 2004) (quoting *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999)).

When preceding a "series of categories of criteria" separated by the word "and," the phrase "'at least one of' modifies each member of the list," making the list conjunctive. *Id.* Tachyon asserts that, under *SuperGuide*, the term "at least one of" in Claims 1 and 20 is conjunctive.

*SuperGuide* did not "set[] forth a *per se* rule that the use of 'at least one of' followed by 'and' connotes a conjunctive list." *3rd Eye Surveillance, LLC v. United States*, 140 Fed. Cl. 39, 69 (2018) (quoting *Apple, Inc. v. Evolved Wireless LLC*, No. IPR2016-01177, 2017 WL 6543970, at *4 (P.T.A.B. Dec. 20, 2017)). Cases following *SuperGuide* have identified several criteria for determining whether its conjunctive construction applies.

- When "at least one of" precedes a two-item list, and the conjunctive construction may cause surplusage, the disjunctive construction applies. *3rd Eye Surveillance*, 140 Fed. Cl. at 68–69.

- When the "items that follow 'at least one of' . . . [are] individual parameters having only one value," instead of "categories that may have multiple values," the disjunctive construction applies. *Apple*, 2017 WL 6543970 at *4.

- When "the specification or claims imply a broader meaning" than would be established by the conjunctive construction, the disjunctive construction applies. *Hewlett-Packard Co., v. MPHJ Tech. Invs., LLC*, No. IPR2013-00309, 2013 WL 8563946, at *5 (P.T.A.B. Nov. 21, 2013).

- When "the claims, specification, and evidence . . . call for a different outcome" than *SuperGuide*, the disjunctive construction applies. *Daifuku Co., Ltd. v. Murata Mach., Ltd.,* No. IPR2015-00083, 2016 WL 3598318, at *4 (P.T.A.B. May 3, 2016).

Shotkam asserts that applying these criteria to the intrinsic evidence supports construing "at least one of . . ., and" as disjunctive. (Docket Entry No. 49 at 14). Shotkam points to the following in support:

(1) The Patent uses "and/or" to describe the camera system. Examples are "[t]he image processing capability allows the [reticle] and/or indicator to transition to being fixed in space relative to the background image," ('045 Patent, Col. 9:65–67), and "a [reticle] and/or indicator generating system to add a [reticle], or graticule, or indicator, to indicate aim point of the camera," ('045 Patent, Col. 4:43–45). (*See* Docket Entry No. 49 at 15–16 (citing '045 Patent, Col. 2:58–60, Col. 4:34–47, Col. 9:61–Col. 10:12,

Col. 11:23–35, Col. 12:3–6, Col. 13:10–13, Col. 14:11–15, Col. 11:65–67, Col. 14:18–24, Col. 14:28–34, Col. 15:3–6, Col. 15:43–46, Col. 18:55–Col. 19:5, Col. 20:31–38)).

(2) Figures 3, 4, and 12, which purportedly "show the [reticle] generating system without a second indicator generating system to add a graticule to indicate aim point of the camera." (*Id.* at 17).

(3) The original patent application, in which Claim 1 stated "a [reticle] and/or indicator generating system to add a [reticle], or graticule, or indicator, to indicate aim point of the camera and/or shooting device." (*Id.* at 17 & n.3; Docket Entry No. 49-4).

(4) A Notice of Allowability, in which the patent examiner amended Claim 1 but did not expressly narrow the scope of the claim. (Docket Entries Nos. 49 at 17, 49-5).

(5) The "camera device" itself, which "only needs either a [reticle] generating system or an indicator generating system to work, but . . . also works with [both]." (Docket Entry No. 49 at 18).

In response, and in support of construing "at least one of . . ., and" as conjunctive, Tachyon highlights the following.

(1) The use of "one or more of" throughout the Patent, which, to be meaningful and avoid redundancy, requires a different definition than "at least one of." (Docket Entry No. 51 at 7 (citing *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006)).

(2) Figure 9, which purportedly shows Claim 1 "as including each of a [reticle], and a graticule, and an alignment system." (Docket Entry No. 47 at 14 (emphasis removed)).

Shotkam's is the better construction. The lists that follow "at least one of" in Claims 1 and 20 include only two categories. Although those categories "may have multiple values" and not "only one value," *Apple*, 2017 WL 6543970 at *4, those values are predetermined and limited. For Claim 1, the user may select one of many preset reticles and whether to add a graticule. ('045 Patent, Figs. 5, 9 (showing "many possible shapes and options for [reticles]" and only one type of graticule)). For Claim 20, the user may select "one or more" of a set number of types of "optical alignment" mechanisms or "laser alignment" mechanisms. ('045 Patent, Claim 20). Both claims present categories that are more limited than the expansive categories presented in *SuperGuide*.

*See SuperGuide*, 358 F.3d at 884 ("at least one of a desired program start time, a desired program end time, a desired program service, and a desired program type").

The broader context of the '045 Patent also supports a disjunctive reading of the disputed term. Because the court "presume[s]" that claim terms "have the same meaning throughout all of the claims in the absence of any reason to believe otherwise," *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012) (citing *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed. Cir. 2001), the court reads "at least one of . . ., and" in a manner that makes sense throughout the claims, without impermissibly altering the scope or validity of any claim. The conjunctive reading that Tachyon urges frustrates that goal. For example, Claim 17 states that the "camera device" goes "into a low power sleep mode . . . and is woken up by at least one of: a bump; a shake; a closing action of a gun; a closing action of a semi-automatic long gun; and a pumping action of a gun." ('045 Patent, Claim 17, Col. 22:1–8). Reading "at least one of" as conjunctive would result in the unlikely meaning that the "camera device" would not be "woken up" unless it was bumped, shaken, closed, and pumped. Additionally, the "gun closing action of a semi-automatic long gun" does not apply to several types of shooting devices that may be used with the camera. A similar example is Claim 11, which states that "the discharge sensor is at least one of: an accelerometer; a vibration sensor; a microphone; a muzzle flash sensor; an optical sensor; a mechanical mechanism coupled to a trigger mechanism of the shooting device; and an electrical switching mechanism coupled to a trigger mechanism of the shooting device." ('045 Patent, Claim 11, Col. 20:67–Col. 21:11). The claims "imply a broader meaning" than the conjunctive construction would allow, supporting the disjunctive construction. *Hewlett-Packard*, 2013 WL 8563946 at *5.

The '045 Patent description of the technology and its functions similarly supports a disjunctive reading. The embodiments frequently refer to reticles, graticules, and indicators using "and/or," seemingly interchangeably with "or." (*See* '045 Patent, Embodiment 1, Col. 11:31–33 ("a [reticle] and/or indicator generating system"), Embodiment 3, Col. 12:3–7 ("a [reticle] and/or indicator generating system to add a [reticle], or graticule, or indicator"), Embodiment 20, Col. 14:11–14 ("a [reticle] and/or indicator generating system to add a [reticle], or graticule, or indicator"), Embodiment 21, Col. 14:18–24 ("a [reticle] and/or indicator generating system to add a [reticle], or graticule, or indicator"), Embodiment 22, Col. 14:28–34 ("a [reticle] and/or indicator generating system to add a [reticle], or graticule, or indicator"), Embodiment 26, Col. 15:3–6 ("the camera device can display a [reticle], or graticule, or indicator"), Embodiment 30, Col. 15:43–46 ("indicator and/or [reticle] generating system"), Embodiment 58, Col. 18:55–Col. 19:5 ("one, or two, or multiple [reticles], and/or indicators"). The "summary of the invention" similarly describes a system that "optionally display[s] selected [reticles] or indicators." ('045 Patent, Col. 2:46–60 (uncapitalized)).

Support for the disjunctive construction is also found in the '045 Patent Figures. Figure 3, set out below, shows when in the data-recording process a reticle is added. Figure 3 does not include a graticule or indicator.



('045 Patent, Fig. 3).

Figure 4, set out below, similarly shows the device using reticles without a graticule.

Figure 4

Playback Examples

First playback run shows continuous video

('045 Patent, Fig. 4).

Figure 9, partially set out below, shows the invention with and without a graticule. ('045 Patent, Fig. 9).



If, as Tachyon argues, Claim 1 was read as conjunctive, those figures would show graticules and reticles. That the figures instead show the invention with and without a graticule supports the disjunctive construction of "at least one of . . ., and."

The embodiments and figures similarly support a disjunctive construction for the disputed term in Claim 20. Embodiments 12 and 28 describe the invention as having an "optional laser" or multiple alignment techniques. (*See* '045 Patent, Embodiment 12, Col. 12:62–65 ("the camera device has optional laser, . . . or other optical alignment capability"), Embodiment 28, Col. 15:23–32 ("the camera device point of aim can be aligned with the shooting device point of aim [by] utilizing laser alignment techniques, or a combination of laser and optical alignment techniques.")). Descriptions of the embodiments similarly describe the laser as optional. (*See* '045 Patent, Col. 5:7–9 ("In some preferred embodiments, a laser provides alignment capabilities to align the camera aim point with the shooting device aim point."), Col. 5:13–19 ("In certain preferred embodiments, the offset data between the aim point of the camera and the aim point of the shooting device may be determined automatically, or by the shooter using optical or laser alignment techniques.").

Figure 2, set out below, shows an "optional laser" and a "[l]ens housing with option of laser." ('045 Patent, Fig. 2).



Figure 6, set out below, shows different types of alignment systems, including an "optional laser." ('045 Patent, Fig. 6).

**Figure 6**



In the examples above if the point of aim reticule is used it requires the barrel be clamped, held steady, or somehow fixed, to allow the video to be played on a display to confirm matching point of aim.

The integrated laser option (bottom sketch), or integrated display option (not shown), built in to the camera eliminates the need for fixing the barrel position.

Figure 7, set out below, shows an "optional integrated laser for alignment" as an "[o]ptional [f]eature[]."  ('045 Patent, Fig. 7).



The figures are consistent in supporting a disjunctive construction. Rather than showing the invention as requiring a laser alignment system, as the conjunctive construction would require, the figures show that system as optional, as the disjunctive construction would require.

The prosecution history also supports a disjunctive construction. The term "at least one of" was added during the prosecution in place of the terms "and/or";[2] "or";[3] "one, or any combination, of";[4] and "either."[5] Those are disjunctive terms. In the original patent application, Claim 1 read, in part, "[a] camera device comprising: . . . a [reticle] and/or indicator generating

---

[2] *Compare* (Docket Entry No. 49-4, Claims 1, 4) *with* ('045 Patent, Claims 1, 4).
[3] *Compare* (Docket Entry No. 49-4, Claims 3, 7) *with* ('045 Patent, Claims 3,7).
[4] *Compare* (Docket Entry No. 49-4, Claim 11) *with* ('045 Patent, Claim 11).
[5] *Compare* (Docket Entry No. 49-4, Claims 12, 17) *with* ('045 Patent, Claims 12, 17).

system to add a [reticle], or graticule, or indicator, to indicate aim point of the camera and/or shooting device." (Docket Entry No. 49-4 at 1). Claim 20 similarly read: "a camera device has optional laser or optical alignment capabilities." (*Id.* at 6).

Tachyon argues that because the '045 Patent uses the term "one or more of" in several places, (*See, e.g.* '045 Patent, Claims 2, 3, 7, 13, 20), and because different words demand different meanings, "at least one of" must have a different meaning than "one or more of." (Docket Entry No. 51 at 7). The prosecution history undercuts that argument. The history shows that, from the original application to the Patent, the phrase "one or more of" was used to replace the phrase "include, but are not limited to," in all but one instance.[6] In the one exception, Claim 2, "one or more of" was inserted as part of a larger restructuring and not as a replacement for a term.[7]

That "one or more of" was primarily used to replace "include, but are not limited to," supports the difference between that phrase and "at least one of." Throughout the claims, "one or more of" is used to refer to singular and discrete items, including: points in time, (Claims 2, 3); physical components, (Claims 7, 20); and projectile characteristics, (Claim 13). The items that follow the term "at least one of" are broader and incorporate multiple components or elements, including: pictures, (Claims 1, 3); systems, (Claims 1, 4); types of alignment, (Claims 7, 20); mechanisms and sensors, (Claims 11, 12); and movement, (Claim 17).

The difference is apparent in Claims 7 and 20, which use both "at least one of" and "one or more of" in different places. Those claims are set out below, with the terms in bold:

> 7. The camera device according to claim 1, wherein the aim point of the camera is aligned with the aim point of the shooting device using **at least one of**
>> optical alignment with **one or more of** an optical bore sighting, a shooting device's fixed sight, a scope mounted on the shooting device, the graticule generated by the indicator generating system; and

---

[6]  *Compare* (Docket Entry No. 49-4, Claims 3, 7, 13, 20) *with* ('045 Patent, Claims 3, 7, 13, 20).
[7]  *Compare* (Docket Entry No. 49-4, Claim 2) *with* ('045 Patent, Claim 2).

> laser alignment with **one or more of** laser bore sighting, a laser integral to the camera device, a laser separate from the camera device.
>
> 20.  A point of aim compensation and correction system comprising:
>   a camera device mounted on a shooting device for capturing an image;
>   **at least one of**
>     an optical alignment mechanism includes **one or more of** an optical bore sighting, a shooting device's fixed sight, a scope mounted on the shooting device, a generated indicator, and a generated overlay, and
>     a laser alignment mechanism with **one or more of** laser bore sighting, a laser integral to the camera device, a laser separate from the camera device, to adjust and offset an aim point indicator of the camera device and an aim point of the shooting device by programing a correction offset into the camera device; and
>   wherein the offset data is processed by the camera device to align the aim point of the camera to the aim point of the shooting device.

('045 Patent, Claim 7, Col. 20:39–48; Claim 20, Col. 22:28–45).

Those claims demonstrate that "at least one of" refers to "alignment[s]" and "alignment mechanism[s]," which consist of "one or more" components.  An "optical alignment mechanism" may include "an optical bore sighting," a "fixed sight," or both.  A "laser alignment mechanism" may include a "laser bore sighting," a "laser separate from the camera device," or both.  "One or more of" precedes the list of the components of the larger system, and both Claims 1 and 20 require "at least one of" those systems.  That "one or more of" has a different meaning than "at least one of" does not preclude construing "at least one of . . ., and" as disjunctive.

Construing "at least one of . . ., and" as disjunctive "stays true to the claim language and most naturally aligns with the . . . description of the invention," making it "the correct construction." *Phillips*, 415 F.3d at 1316 (quoting *Renishaw*, 158 F.3d at 1250).  The court construes Claims 1 and 20 as follows:

- 1.  A camera device comprising: a camera mounted on a shooting device . . .; at least one of either a [reticle] generating system . . ., or an indicator generating system . . ., or both; and an alignment system . . . .  ('045 Patent, Claim 1).

- 20.  A point of aim compensation and correction system comprising: a camera device mounted on a shooting device . . .; at least one of either an optical alignment mechanism

. . ., or a laser alignment mechanism . . ., or both; and wherein the offset data is processed by the camera device . . . . ('045 Patent, Claim 20).

## III.   Summary Judgment

### A.   The Legal Standard

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (per curiam) (internal quotation marks omitted); *accord* FED. R. CIV. P. 56(a).   "A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (internal quotation marks omitted).   "The moving party . . . bears the initial responsibility of informing the district court of the basis for its motion," *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (internal quotation marks omitted), and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (per curiam) (internal quotation marks omitted).   Although the party moving for summary judgment must demonstrate the absence of a genuine and material factual dispute, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (per curiam).   "[A] fact is 'material' if its resolution could affect the outcome of the action." *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (per curiam).   "If the moving party fails to meet [its] initial burden, the motion [for summary judgment]

22

must be denied, regardless of the nonmovant's response." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014) (internal quotation marks omitted).

"When the moving party has met its . . . burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey v. E. Baton Rouge Parish Prison*, 663 F. App'x 328, 331 (5th Cir. 2016) (per curiam) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).  "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 317 (5th Cir. 2016) (internal quotation marks omitted).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018), *cert. denied sub. nom. City of Fort Worth, Tex. v. Darden*, 139 S. Ct. 69 (2018).

### B. The Claims

Tachyon moved for summary judgment on Shotkam's infringement claims, arguing that: (1) under Tachyon's proposed conjunctive construction, it has not infringed the '045 Patent, because Claims 1 and 20 require a graticule and a laser alignment system, respectively, and Tachyon's product has neither; and (2) because there is no direct infringement, there cannot be indirect infringement.  (Docket Entry No. 47 at 6–7, 18–22).  Because the court finds and concludes that the disputed term in Claims 1 and 20 is disjunctive, Tachyon's argument fails.  A product may infringe Claim 1 without using a graticule, and it may infringe Claim 20 without using a laser alignment system.  Shotkam has alleged that Tachyon's product uses a reticle generating system,

an alignment system, and other elements that, if found by a jury, could infringe Claims 1 and 20 of the '045 Patent.  (Docket Entry No. 1 at 5–8).  A genuine factual dispute precludes summary judgment against Shotkam's direct-infringement claim.

Shotkam's indirect-infringement claim turns in part on its direct-infringement claim.  *See Limelight Networks, Inc. v. Akamai Tech., Inc.*, 572 U.S. 915, 917 (2014) (a defendant cannot "be liable for inducing infringement of a patent under 35 U.S.C. 271(b) when no one has directly infringed the patent"); *Bilfinger Water Tech. v. Hendrick Mfg. Co.*, No. H-14-1164, 2015 WL 3404952, at *4 (S.D. Tex. May 26, 2015) ("[T]here can be no inducement or contributory infringement without an underlying act of direct infringement." (internal quotation marks omitted)).  Because Tachyon is not entitled to summary judgment on Shotkam's direct-infringement claim, it is also not entitled to summary judgment on Shotkam's indirect-infringement claim.

## IV.    Conclusion

Tachyon's motion for summary judgment is denied.

SIGNED on January 4, 2021, at Houston, Texas.

_Lee H. Rosenthal_
_____
Lee H. Rosenthal
Chief United States District Judge